**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

EAGLE WATER, LLC

VERSUS

ARCH INSURANCE CO.

CIVIL ACTION NO. 17-250

JUDGE ELIZABETH ERNY FOOTE

MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Currently pending before the Court is a motion for summary judgment filed by the Defendant, Arch Insurance Company ("Arch"). [Record Document 30]. After a review of the motion, opposition, reply, and supplements thereto filed by the parties, and for the following reasons, Arch's motion for summary judgment shall be **GRANTED**.

## FACTS

The facts giving rise to this insurance dispute are fairly straightforward. Plaintiff, Eagle Water, LLC ("Eagle Water"), owns a sewer system that services the Kingston Plantation neighborhood in Bossier City, Louisiana. Record Document 1-2, p. 3. For that sewer system, Eagle Water secured insurance from Arch. Record Document 32, pp. 6-7.

On January 5, 2016, a localized sewer collapse occurred near a manhole in Kingston Plantation. Record Document 30-2, p. 1. In addition to the collapsed manhole, Eagle Water discovered a sinkhole in a homeowner's yard. Record Document 32, p. 4. Eagle Water hired Pulley Construction to repair the sewer system. Record Document 32-3, p. 1. It also notified Arch of the situation, and Arch sent an adjustor to the site. Record

Document 32-1, p. 3. Over the following seven to eight months, Pulley Construction excavated streets, driveways, sidewalks, and yards in order to install a bypass pump system and prevent sewage backup into any of the residences in the neighborhood. Id. at pp. 2-3, 6. Pulley Construction's work also involved repairing sewer mains and excavating and replacing the sunken manhole. Record Document 30-1, pp. 10-11. Eagle Water paid Pulley Construction $608,952.19 to perform this work. Record Document 32-1, p. 1. An engineer hired by Eagle Water represented that if the bypass system had not been installed, "there may have been" (1) a backup of raw sewage into the homes served by the affected manhole; (2) a raw sewage spill onto lawns; and/or (3) raw sewage that spilled into the storm sewer system and consequently into Willow Chute Bayou. Id. at p. 6.

In August of 2016, Arch denied Eagle Water's claim for reimbursement, and this suit followed. Eagle Water seeks a declaratory judgment that coverage exists under the insurance contract; recovery of the $608,952.19 it paid Pulley Construction for measures that prevented and/or minimized the damages Arch would have had to pay otherwise; and attorney's fees, costs, and penalties. Arch filed the instant motion for summary judgment contending no coverage exists for Eagle Water's repair work in Kingston Plantation. Eagle Water opposes that motion, submitting that while coverage is not guaranteed under the plain language of the contract, persuasive jurisprudence compels the conclusion that coverage should not be barred under the circumstances of this case.

Based upon the briefing, it is clear to the Court that Arch does not necessarily

dispute that Eagle Water's actions prevented the backup and/or spillage of sewage. Rather, as a factual matter, it disputes whether all of Pulley Construction's work was designed to address the initial manhole collapse or, instead, whether the scope of the project expanded over time to address other issues. The resolution of those factual disputes is not material, however, as this case turns on the legal question of whether coverage exists under the terms of the governing insurance contract.

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See id. at 322-323.

Once the movant carries its initial burden, it is incumbent upon the non-moving

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

party to demonstrate the existence of a genuine dispute as to a material fact.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986);

Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996)(citations omitted).  If the

motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the

pleadings and designate specific facts in the record showing that there is a genuine issue

for trial."  Wallace, 80 F.3d at 1047 (citations omitted).  This burden is not satisfied with

some metaphysical doubt as to the material facts, by conclusory or unsubstantiated

allegations, or by a mere scintilla of evidence.  See Little v. Liquid Air Corp., 37 F.3d 1069,

1075 (5th Cir. 1994)(citations omitted). However, "[t]he evidence of the non-movant is to

be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1985)(citations omitted); Reid v. State

Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986)(the court must "review the

facts drawing all inferences most favorable to the party opposing the motion").

Additionally, Local Rule 56.1 requires the moving party to file a statement of

material facts as to which it contends there is no genuine issue to be tried.  Pursuant to

Local Rule 56.2, the party opposing the motion for summary judgment must set forth a

"short and concise statement of the material facts as to which there exists a genuine issue

to be tried."  All material facts set forth in the statement required to be served by the

moving party "will be deemed admitted, for purposes of the motion, unless controverted

as required by this rule."  Local Rule 56.2.

Under the Erie doctrine, federal courts sitting in diversity apply the substantive law

of the forum state and federal procedural law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817 (1938).  In the instant case, it is undisputed that Louisiana law applies to Eagle Water's cause of action.

Before turning to a consideration of the policy language in this case, the Court will examine Louisiana law as to the interpretation of insurance policies.  An insurance policy is a contract between the parties, and it is thus construed using the rules of contract interpretation found in the Civil Code.  La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759, 763 (La. 1994).  Individual words and phrases used in an insurance policy are to be construed using their plain, "generally prevailing meaning," La. Civ. Code art. 2047, and the insurance policy as a whole must be construed "according to the entirety of its terms and conditions."  La. R.S. § 22:881; see also La. Civ. Code art. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.").  When the words of an insurance contract are clear and explicit and lead to no absurd consequences, the contract must be enforced as written and no further interpretation may be made in search of the parties' intent.  La. Civ. Code art. 2046; Peterson v. Schimek, 98-1712 (La. 3/2/99); 729 So. 2d 1024, 1028.  The plaintiff bears the ultimate burden of proving that the claim in question falls within the policy's coverage.  Doerr v. Mobil Oil Co., 2000-0947 (La. 12/19/00); 774 So. 2d 119, 124.  The insurer, however, bears the burden of proving that policy limits or exclusions apply.  Tunstall v. Stierwald, 2001-1765 (La. 2/26/02); 809 So. 2d 916, 921.  The purpose of liability insurance is to afford the insured protection from

damage; therefore, claims and policies should be construed to effect, and not to deny, coverage. Reynolds v. Select Props, Ltd., 93-C-1480 (La. 4/11/94); 634 So. 2d 1180, 1183.

In the event an insurance clause is found to be ambiguous, it must be construed against the insurer. Breland v. Schilling, 550 So. 2d 609, 610 (La. 1989) (citing La. Civ. Code art. 2056). "Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." Id. at 610-11 (citing La Civ. Code art. 2045). Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts, under which coverage could be afforded. Jones v. Estate of Santiago, 2003-1424 (La. 4/14/04); 870 So. 2d 1002, 1010 (citing Reynolds, 634 So. 2d at 1183).

## I.     Coverage.

In the instant case, Eagle Water seeks coverage only under the liability portion of the Arch policy. Record Document 46, p. 1. Thus, the Court will disregard the policy language concerning first-party coverage, as well as counsels' arguments related thereto. Section I of Arch's liability policy provides:

> We shall pay on behalf of the Insured those sums that the Inured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury", "advertising injury", "professional liability", "wrongful acts" or "acts, errors or omissions" to which this Coverage Part applies. We shall have the right and duty to defend the Insured against any "suit" seeking those damages, even if the allegations are groundless, false or fraudulent. We may, at our discretion, investigate any "occurrence", offense, error, omission, "wrongful act" or "act, error or omission" and settle any claim or "suit" that may result . . . .

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION III-SUPPLEMENTARY PAYMENTS**.

Record Document 30-7, p. 67 (emphasis in original). Section V provides a significant exclusion for the term "property damage." It excludes from coverage damage to "property owned by the Insured." Id. at p. 59. Thus, there are two questions before the Court: (1) was Eagle Water liable to any third parties for damages such that Arch's coverage was triggered? and (2) if so, is part or all of the claim excluded by the "owned property" exclusion? If coverage is not available under the first inquiry, then there is no reason for the Court to analyze the impact, or potential abrogation of, the owned property exclusion. Thus, the Court will first address whether coverage was triggered by the events in this case; that is, was Eagle Water liable to any third parties?

As stated earlier, Arch's policy provides coverage to Eagle Water for "sums" that Eagle Water "becomes legally obligated to pay as damages because of . . . property damage." Id. at p. 67. Thus, in order for Eagle Water to prevail, this Court must find that property damage[2] to third-party property rendered Eagle Water legally obligated to pay money to a third party as damages. The policy does not define the term damages, nor does it define what is meant by "legally obligated." The true crux of the dispute is whether Eagle Water was legally obligated to pay damages.

Eagle Water concedes that it never had to pay a third party any sum of money for property damage resulting from the sewer system collapse. Instead, it argues that its

---

[2] Arch does not dispute that "property damage" occurred in this case.

proactive work prevented insurance claims that inevitably would have resulted had Eagle

Water let the system fail on its own. Relying on a 1960 Pennsylvania case and a 1974

California case, Eagle Water argues that "courts have recognized that even where there is

no actual damage to third-party property, the insured is entitled to recover the amounts

that it spent preventing what would have otherwise been a covered claim under the liability

portion of the insurance policy." Record Document 46, p. 3.

In Leebov v. U.S. Fidelity & Guaranty Co., the insured's work created a landslide.

401 Pa. 477 (Pa. 1960). He sought recovery under a liability policy for the damages he

caused to one home, as well as the expenses he incurred to stop the landslide and repair

the damage that had resulted. The court found that the insurer was required to pay the

insured for "losses arising by reason of the liability imposed upon him [plaintiff] by law for

damages because of injury to or destruction of property." Id. at 480 (internal marks

omitted). The court focused in great detail on equitable concerns– that it would be a

windfall for the insurer to be required to pay nothing when the insured proactively took

immediate measures to mitigate and remedy the landslide, but that had the insured done

nothing, the insurer would have been obligated to pay "considerably more." Id. at 481.

However, aside from equitable concerns, Leebov sheds no analytical insight on the

question facing this Court, as it did not explore or analyze the term "legally obligated to

pay" nor did its analysis of the insurance contract provide great clarity. Instead, Leebov's

primary focus was on the inequity in denying relief in light of the good faith efforts of the

insured (a concern shared by this Court). Nonetheless, the Court is unpersuaded by

Leebov's rationale that fairness and equity warrant the manufacture of coverage.

Eagle Water next cites Globe Indemnity Co. v. State of California, 43 Cal. App. 3d (Cal. 1974), for the proposition that "damages includes not only direct property damage, but also damages incurred because of property damage, even if the damage is not realized." Record Document 46, p. 4. In Globe, the insured's fire spread to adjoining property, and ultimately, the State of California had to engage in fire suppression efforts to prevent further spread and destruction of other property. California sought reimbursement of the costs it expended on the fire suppression efforts, and the insured sought indemnity under its liability policy with its insurer. Globe's inquiry focused on whether a policy that provides coverage for "damages because of property damage" allowed coverage for fire suppression costs. 43 Cal. App. 3d at 750. That is, were fire suppression costs the result of property damage when, in fact, they acted to prevent property damage. Ultimately, the court concluded that those costs were covered under the policy language; unfortunately, that holding does not advance Eagle Water's cause. Id. at 751. Globe is factually inapposite– it did not involve an insured who took proactive steps to mitigate damages or prevent greater loss and thereby insulate itself from third-party liability. Rather, the insured was liable to third parties, including the State of California, for the damage his fire caused. Because the inquiry before this Court is whether Eagle Water ever became legally obligated for third-party damages, Globe provides no guidance.

Eagle Water has failed to provide any governing case law to support its contention that coverage is available. And, outside of Leebov and Globe, it has provided no

persuasive case law to support its claim. The Court's own research has similarly failed to

locate any cases that support Eagle Water's position. However, the plain language of the

contract drives the solution in this matter.

The question before the Court is whether Eagle Water was "legally obligated to pay"

damages to a third party. As recently as 2011, the Fifth Circuit noted that no Louisiana

court had interpreted the phrase "legally obligated to pay." Fed. Ins. Co. v. New

Hampshire Ins. Co., 439 F. App'x 287, 290 (5th Cir. 2011). This Court has been unable to

find any case since then that has defined the phrase. However, Rollins v. Richardson,

35,171 (La. App. 2 Cir. 12/7/01); 803 So. 2d 1028, provides illumination. There, the

plaintiff brought a tort suit against her neighbors and the neighbors' insurer, Allstate,

stemming from waste on the property that led to the plaintiff's child's illness. The

neighbors settled with the plaintiff, and the plaintiff reserved her rights to pursue a

judgment against Allstate. The settlement agreement specified that the neighbors

assigned to the plaintiff any claims or rights they had vis-a-vis Allstate and they transferred

any rights they had to the third-party demand against Allstate. Nonetheless, the district

court dismissed the plaintiff's claims against Allstate on summary judgment, finding that

the plaintiff's settlement with the neighbors extinguished Allstate's obligation to the

plaintiff, as Allstate provided coverage only to the extent that its insured became legally

obligated to pay damages. Thus, by virtue of the settlement, the neighbors were no longer

legally obligated to the plaintiff and the plaintiff's claims against the neighbors were

dismissed; thus, Allstate's indemnification obligation likewise ended. On appeal, the

appellate court affirmed, explaining that

> Allstate's policy expressly provides that its obligation of indemnification results from the Richardsons becoming "legally obligated to pay" for bodily injury. A trial solely against Allstate could result in an abstract determination that the Richardsons were negligent, but not in a judgment causing the Richardsons to "become legally obligated to pay" Rollins. Accordingly, we agree with the trial court that Allstate has shown that the Richardsons were released from the entirety of the claim against them as tortfeasors, and that the condition giving rise to Allstate's obligation for indemnity under the policy cannot occur.

Id. at 1033-34.[3]

This case mirrors the legal inquiry in Rollins. Just as the neighbors were not legally obligated to pay damages to the plaintiff and therefore there was no concomitant obligation owed by Allstate, here Eagle Water was not legally obligated to pay damages to a third party and therefore there is no concomitant obligation owed by Arch. The feature that ultimately saved the Rollins plaintiff on appeal– a fact question about the intent of the parties– is notably absent here. To be sure, Eagle Water has specifically affirmed to the Court that there was no mistake or error in the creation of its contract with Arch and that it acquired the exact policy it intended to have. Record Documents 42 & 46. There is no

---

[3] On appeal from the Second Circuit, the Louisiana Supreme Court reversed on a fact question. Rollins v. Richardson, 2002-0556 (La. 12/4/02); 833 So. 2d 921. That is, before the lower courts and before the Supreme Court, the plaintiff argued and presented evidence that it was the intent of the parties that she be able to pursue a claim directly against Allstate. She presented evidence of Allstate's knowledge of and agreement to being added as a defendant in light of dismissal of its insured from the suit. Thus, genuine issues of material fact remained with respect to the confection of the settlement agreement and Allstate's role in that transaction, and summary judgment for Allstate was inappropriate. In reversing, however, the Supreme Court's opinion did not disturb the Second Circuit's analysis or resulting legal conclusion that, under the language of the contract, the insureds were no longer "legally obligated to pay" the plaintiff.

allegation that there was not a "meeting of the minds" or that the policy language defeated the intent of the parties.

Under the plain language of the instant contract, it is undisputed that Eagle Water never became "legally obligated to pay" anyone because of the collapsed manhole. While it is conceivable that the sewer system may have failed on its own had Eagle Water waited and taken no action and that, as a result, Eagle Water would have been sued by one or more homeowners, that is speculation at this point. To determine in the abstract whether coverage would have been triggered under a different factual scenario in which Eagle Water waited until it became "legally obligated" to pay damages is an academic exercise. The action taken by Eagle Water was intended to prevent the type of damage the policy would have covered, and no such damage in fact resulted. The Court is sympathetic to Eagle Water, as it essentially did the right thing at its own financial peril. However, this Court cannot craft into the insurance contract the equitable provisions that Eagle Water seeks, and it cannot manufacture coverage where none would otherwise exist.

Here, the terms of the contract are not ambiguous, nor are they subject to more than one interpretation. The parties are bound by the terms of the policy to which they agreed. That policy renders Arch liable only when Eagle Water becomes legally obligated to pay a third party for damages– a situation that never arose in this case. This prerequisite event never came to pass and consequently Arch's obligation never began.

The specific amount of damages sought by Eagle Water in this case actually serves to bolster the Court's conclusion. Eagle Water requests $608,952.19, which is the amount

it paid to Pulley Construction for repair work. Thus, the amount it seeks as third-party "damages" represents the cost of its repair work. Eagle Water has conflated the cost of overhauling the sewer system with damages it may have had to pay for third-party property damage. Eagle Water's measure of damages is flawed, in that it simply assumes the cost of repair work is the exact same dollar figure as the alleged damages that would have occurred to residential property owned by others. This flaw highlights the fact that Eagle Water has no other measure of damages to employ because it never became legally obligated to any third-party homeowner.[4]

In sum, the Court concludes that coverage was never triggered under the plain language of the contract. Accordingly, the Court need not resolve the question of whether the owned property exclusion must be abrogated.

## II. Waiver.

The only remaining issue to address is Eagle Water's contention that Arch waived any coverage defenses or objections by willingly paying the Ashes' claim for damages without a reservation of rights. "Waiver is usually defined as the intentional relinquishment of a known power or privilege." Tate v. Charles Aguillard Ins. & Real Estate, Inc., 508 So. 2d 1371, 1373 (La. 1987). In Tate, the Louisiana Supreme Court held "that waiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, even though

---

[4] While it is true that one homeowner did experience damage and make a claim for reimbursement, it is the Court's understanding that that damage only occurred after Pulley Construction began its work. The damage did not precede that.

the effect may bring within coverage risks originally excluded or not covered." Id. at 1375.

Here, the Court has no hesitation in rejecting Eagle Water's assertion that Arch waived any coverage disputes by paying the Ashes' claim. Arch paid a third party for damages arising from property damage for which Eagle Water was responsible, as the damages stemmed from Eagle Water's efforts to repair the sewage system. A waiver argument may be more appropriate if other third parties filed claims similar to those submitted by the Ashes and Arch denied those claims. But a waiver argument cannot survive under the facts of this case because paying the Ashes for damages caused by Eagle Water is wholly distinguishable, both factually and legally, from reimbursing Eagle Water for preventative maintenance costs. Arch's payment to the Ashes is not inconsistent with denying reimbursement to Eagle Water. In short, Arch did not waive its coverage objections in this case.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Arch's motion for summary judgment [Record Document 30] be and is hereby **GRANTED**. All of the Plaintiff's claims against the Defendant are hereby **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this ___28th___ day of December _____, 2018.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE